LINA FRANCO LAW P.C.
Lina M. Franco
Wilhelm J. Ceron
42 Broadway, 12th Floor
New York, New York 10004
Telephone: (800) 933-5620
www.LuchaPorTusDerechos.com
www.LinaFrancoLawPC.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JUAN JUAREZ, DOUGLAS F. PINTO, MICHELE PLACENTI, TINA PINHEIRO, MARIO LIMA, RUBENS RODRIGUES DEPAULA. VERONICA MONTIEL, ZEFERINO RAMIREZ, ALEXANDRE M. MACEDO, individually *and on behalf of others similarly situated,* | **COMPLAINT** <br><br> **Collective Action under 29 U.S.C. § 216(b)** <br><br> **ECF Case** |

                              *Plaintiff,*

              -against-

SYS CHELSEA INC., TH PLUS INC., 206
7th AVE CORP., AND 206 AVE CORP. VII,
(d/b/a "SALSA & SALSA"; D/B/A
"SHANGRI-LA"), IRENE LA AND SOW K.
LA

                              *Defendants.*
--------------------------------------------------------X

Juan Juarez, Douglas F. Pinto, Michele Placenti, Tina Pinheiro, Mario Lima, Rubens

Rodrigues DePaula, Veronica Montiel, Zeferino Ramirez, Alexandre M. Macedo, ("Plaintiffs"),

individually and on behalf of others similarly situated, by and through their attorneys, Lina Franco

Law, P.C., upon their knowledge and belief, and as against Sys Chelsea Inc., Th Plus Inc., 206 7th

Ave Corp., and 206 Ave Corp VII. (d/b/a "Salsa and Salsa" and "Shangri-La") ("Defendant

Corporation"), Irene La and Sow Kham La (each an "Individual Defendant" and collectively with "Defendant Corporation", "Defendants"), allege as follows:

## NATURE OF THE ACTION

1.  Plaintiffs are former employees of Defendants Sys Chelsea Inc., Th Plus Inc., 206 7th Ave Corp., and 206 Ave Corp. VII, (d/b/a "Salsa and Salsa" and "Shangri-La") ("Defendant Corporations"), Irene La and Sow Kham La.

2.  Defendants own, operate, and/or control two restaurants in the Chelsea area of Manhattan. A Mexican restaurant located at 206 Seventh Avenue, New York NY under the name of "Salsa and Salsa" and an Asian style restaurant next door at 208 Seventh Avenue, New York NY under the name "Shangri-La".

3.  Plaintiffs were employed by defendants as waiters, busboys, cooks and bartenders.

4.  At all times relevant to this complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate compensation for the hours over 40 per week that they worked. Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiffs appropriately for any hours worked over 40, either at the straight rate of pay, or for any additional overtime premium.

5.  Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours per day.

6.  Defendants' conduct extended beyond the Plaintiffs to all other similarly situated employees. At all times, relevant to this complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work more than forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

7.      For at least six years prior to the filing of this action, continuing to the present, Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' and other delivery employees' tips and made unlawful deductions from Plaintiffs' and other delivery employees' wages.

8.      Plaintiffs now brings this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum wages and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Lab. Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commission of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 137-1.7 (2006) (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees, and costs.

9.      Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216 (b).

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b) (FLSA), 28 U.S.C. § 1337 (interstate commerce) and 28 U.S.C. § 1331 (federal question). Supplemental jurisdiction over Plaintiff' state law claims is conferred by 28 U.S.C. § 1367(a).

11.      Venue is proper in this District under 28 U.S.C. § 391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district, Defendants operate their businesses in this district, and Plaintiff were employed by Defendants in this district.

## THE PARTIES

*Plaintiffs*

12.     Juan Juarez ("Plaintiff Juarez") is an adult individual residing in Bronx, New York. He was employed by Defendants from March, 2000, until April 1st, 2017.

13.     Douglas F. Pinto ("Plaintiff Pinto" or "Douglas F. Pinto") is an adult individual residing in New Jersey. He was employed by Defendants from approximately June, 2011, until April 1st, 2017.

14.     Michele Placenti ("Plaintiff Placenti") is an adult individual residing in New Jersey. He was employed by Defendants from approximately August, 2015, until April 1st, 2017.

15.     Tina Pinheiro ("Plaintiff Pinheiro") is an adult individual residing in New Jersey. She was employed by Defendants from approximately March, 2000, until April 1st, 2017.

16.     Mario Lima ("Plaintiff Lima") is an adult individual residing in Queens, New York. He was employed by Defendants from approximately November, 2004, until April 1st, 2017.

17.     Rubens Rodrigues DePaula ("Plaintiff Rodrigues") is an adult individual residing in New Jersey. He was employed by Defendants from approximately October, 2009, until April 1st, 2017.

18.     Veronica Montiel ("Plaintiff Montiel") is an adult individual residing in Queens, New York.  She was employed by Defendants from approximately June, 2016, until April 1st, 2017.

19.     Zeferino Ramirez, ("Plaintiff Ramirez") is an adult individual residing in New York, New York. He was employed by Defendants from approximately March, 2000, until April 1st, 2017.

4

20.     Alexandre M. Macedo ("Plaintiff Macedo") is an adult individual residing in New Jersey. He was employed by Defendants from approximately 2000 until April 1st, 2017.

*Defendants*

21.     At all times, relevant to this complaint, Defendants own, operate, and/or control two restaurants. A Mexican restaurant located at 206 Seventh Avenue, New York, NY, named "Salsa and Salsa" and an Asian style restaurant located at 208 Seventh Avenue, New York, NY, named "Sangri-La".

22.     Upon information and belief, "Sys Chelsea Inc.", ("Defendant Corporation") is a domestic corporation organized and existing under the laws of the state of New York. Upon information and belief, it maintains its principal place of business at 206 Seventh Avenue, New York, NY.

23.     Upon information and belief, "Th Plus Inc.", ("Defendant Corporation") is a domestic corporation organized and existing under the laws of the state of New York. Upon information and belief, it maintains its principal place of business at 208 Seventh Avenue, New York, NY.

24.     Upon information and belief, "206 7th Ave Corp.", ("Defendant Corporation") is a domestic corporation organized and existing under the laws of the state of New York. Upon information and belief, it maintains its principal place of business at 206 Seventh Avenue, New York, NY.

25.     Upon information and belief, "206 Ave Corp. VII" ("Defendant Corporation") is a domestic corporation organized and existing under the laws of the state of New York. Upon information and belief, it maintains its principal place of business at 206 Seventh Avenue, New York, NY.

26.     Defendant Irene La is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Irene La is sued individually in her capacity as, on information and belief, an owner, officer and/or agent of Defendant Corporation.

27.     Upon information and belief, Defendant Irene La possesses or possessed operational control over Defendant Corporation, possesses or possessed an ownership interest in Defendant Corporation, and controls or controlled significant functions of Defendant Corporation.

28.     Defendant Irene La determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employees' records, and had the authority to hire and fire employees.

29.     Defendant Sow Kham La is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Irene La is sued individually in her capacity as, on information and belief, an owner, officer and/or agent of Defendant Corporation.

30.     Upon information and belief, Defendant Sow Kham La possesses or possessed operational control over Defendant Corporation, possesses or possessed an ownership interest in Defendant Corporation, and controls or controlled significant functions of Defendant Corporation.

31.     Defendant Sow Kham La determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employees' records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

32.     Defendants operate two restaurants in the Chelsea section of Manhattan. A Mexican Restaurant under the name "Salsa and Salsa," and an Asian style  restaurant doing business as "Shangri-La".

33.     Upon information and belief, individual Defendants Irene La and Sow Kham La have operational control over the Defendant Corporation, possess an ownership interest in Defendant Corporation, and control significant functions of Defendant Corporation.

34.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

35.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

36.     Defendants jointly employed Plaintiffs, and all similarly situated individuals, and are their (and all similarly situated individuals') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

37.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

38.     Upon information and belief, Individual Defendants Irene La operate Defendant Corporation as either an alter egos of themselves, and/or fails to operate Defendant Corporation as entities legally separate and apart from themselves, by, among other things:

    a.   failing to adhere to the corporate formalities necessary to operate the Defendant Corporation as separate and legally distinct entity;

b.  defectively forming or maintaining the Defendant Corporation, by among other things failing to hold annual meetings or maintaining appropriate corporate records;

c.  transferring assets and debts freely as between all Defendants;

d.  operating the Defendant Corporation for his own benefit as the sole or majority shareholder;

e.  operating the Defendant Corporation for his own benefit and maintaining control over it as a closed corporation or closely held controlled entity;

f.  intermingling assets and debts of his own with the Defendant Corporation;

g.  diminishing and/or transferring assets to protect his own interests; and

h.  other actions evincing a failure to adhere to the corporate form.

39.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, control the terms and conditions of employment, and determine the rate and method of compensation in exchange for their services.

40.     In each year from 2011 to present, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

41.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. For example, numerous items that were used and sold daily at "Salsa and Salsa", such as meats and beverages, were produced outside the state of New York.

*Plaintiffs*

42.     Plaintiffs are former employees of Defendants, who were employed performing a variety of functions at both restaurants, such as waiting tables, busing tables, cooking and hosting.

8

43.   Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Juan Juarez*

44.   Plaintiff Juan Juarez was employed by Defendants from on or about March, 2000, until April 1st, 2017

45.   During this time, Plaintiff Juan Juarez ostensibly was employed by Defendants as a waiter and a server at "Salsa and Salsa", the Mexican restaurant owned by Defendants.

46.   Plaintiff Juan Juarez regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

47.   Plaintiff Juan Juarez' work duties required neither discretion nor independent judgment.

48.   Plaintiff Juan Juarez regularly worked more than 40 hours per week.

49.   From approximately April, 2011, until his departure in April 2017, Plaintiff Juan Juarez worked twelve (12) hours per day, five (5) days a week (typically 60 hours per week).

50.   From approximately April, 2011, until April, 2017, Plaintiff Juan Juarez was paid a flat rate of $20 per shift. Plaintiff Juarez typically worked three (3) double shifts and two (2) single shifts.  In total, Mr. Juarez was paid $160 per week.

51.   Throughout his employment with Defendants, Plaintiff Juan Juarez was paid in cash.

52.   Plaintiff Juan Juarez' pay did not vary even when he was required to stay later or work a longer day than his usual schedule, which happened very frequently.

53.   Defendants did not provide Plaintiff Juan Juarez with a meal break or rest period of any kind throughout the entire time he worked there.

54.     Further, Defendants did not provide Juan Juarez with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

55.     Plaintiff Juan Juarez was never notified by Defendants that his tips would be included as an offset for wages.

56.     Defendants did not account for these tips in any daily, weekly, or other accounting of Plaintiff Juan Juarez' wages.

57.     No notification, either in the form of posted notices or other means, was given to Plaintiff Juan Juarez regarding overtime and wages under the FLSA and NYLL.

58.     Defendants never provided Plaintiff Juan Juarez with each payment of wages a statement of wages, as required by NYLL 195(3).

59.     Defendants never provided Plaintiff Juan Juarez, any notice in Spanish (Juan Juarez' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Douglas F. Pinto*

60.     Plaintiff Douglas F. Pinto was employed by Defendants from June, 2011, until April 1st, 2017.

61.     During this time, Plaintiff Douglas F. Pinto ostensibly was employed by Defendants as a server and bartender at "Shangri La", the Asian restaurant owned by Defendants.

62.     Plaintiff Douglas F. Pinto regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

63.     Plaintiff Douglas F. Pinto' work duties required neither discretion nor independent judgment.

64.     Plaintiff Douglas F. Pinto regularly worked more than 40 hours per week.

65.     From approximately June, 2011, until April 1st, 2017, Plaintiff Douglas F. Pinto worked twelve (12) hours per day, two double shifts, five (5) days a week (typically 60 hours per week).

66.     From approximately 2011 until on or about 2015, Plaintiff Douglas F. Pinto was paid a flat rate of $10 per shift. In total, Mr. Pinto was paid $100 per week.

67.     From approximately 2015 until on or about 2017, Plaintiff Douglas F. Pinto was paid a flat rate of $15 per shift. In total, Mr. Pinto was paid $150 per week.

68.     Throughout his employment with Defendants, Plaintiff Douglas F. Pinto was paid in cash.

69.     Plaintiff Douglas F. Pinto' pay did not vary even when he was required to stay later or work a longer day than his usual schedule, which happens very frequently.

70.     Further, Defendants did not provide Douglas F. Pinto with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

71.     Plaintiff Douglas F. Pinto was never notified by Defendants that his tips would be included as an offset for wages.

72.     Defendants did not account for these tips in any daily, weekly, or other accounting of Plaintiff Douglas F. Pinto' wages.

73.     No notification, either in the form of posted notices or other means, was given to Plaintiff Douglas F. Pinto regarding overtime and wages under the FLSA and NYLL.

74.     Defendants never provided Plaintiff Douglas F. Pinto with each payment of wages a statement of wages, as required by NYLL 195(3).

75.     Defendants never provided Plaintiff Douglas F. Pinto, any notice in Portuguese (Douglas F. Pinto's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Michele Placenti*

76.     Plaintiff Michele Placenti was employed by Defendants from August 13th, 2015, until April 1st, 2017.

77.     During this time, Plaintiff Michele Placenti ostensibly was employed by Defendants as a waiter, bartender and server at "Salsa and Salsa", the Mexican restaurant owned by Defendants.

78.     Plaintiff Michele Placenti regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

79.     Plaintiff Michele Placenti work duties required neither discretion nor independent judgment.

80.     Plaintiff Michele Placenti regularly worked more than 40 hours per week.

81.     From approximately August 13th 2015 until April 1st, 2017 Plaintiff Michele Placenti worked 4 double shifts (12) hours per day, four (4) days a week (typically 48 hours per week).

82.     From approximately August 13th, 2015 until April 1st, 2017 Plaintiff Michele Placenti was paid a flat rate of $10 per shift. In total, Mr. Placenti was paid $80 per week.

83.     Throughout his employment with Defendants, Plaintiff Michele Placenti was paid in cash.

84.     Plaintiff Michele Placenti pay did not vary even when he was required to stay later or work a longer day than his usual schedule, which happened very frequently.

85.     Plaintiff Michele Placenti was required to keep track of his time. Defendants utilized a time tracking device to accurately reflect his actual hours worked.

86.     Further, Defendants did not provide Michele Placenti with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

87.     Plaintiff Michele Placenti was never notified by Defendants that his tips would be included as an offset for wages.

88.     Defendants did not account for these tips in any daily, weekly, or other accounting of Plaintiff Michele Placenti's wages.

89.     No notification, either in the form of posted notices or other means, was given to Plaintiff Michele Placenti regarding overtime and wages under the FLSA and NYLL.

90.     Defendants never provided Plaintiff Michele Placenti with each payment of wages a statement of wages, as required by NYLL 195(3).

91.     Defendants never provided Plaintiff Michele Placenti any notice in Portuguese (Mr. Placenti's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Tina Pinheiro*

92.     Plaintiff Tina Pinheiro was employed by Defendants from March, 2000, until April 1st, 2017.

93.     During this time, Plaintiff Tina Pinheiro ostensibly was employed by Defendants as a waitress and server at "Salsa and Salsa", the Mexican restaurant owned by Defendants.

94.     Plaintiff Tina Pinheiro regularly handled goods in interstate commerce, such as alcohol and other supplies produced outside the state of New York.

13

95.    Plaintiff Tina Pinheiro's work duties required neither discretion nor independent judgment.

96.    Plaintiff Tina Pinheiro regularly worked more than 40 hours per week.

97.    From approximately 2011 until 2013, Plaintiff Tina Pinheiro worked five (5) shifts twelve (12) hours per day, five (5) days a week (typically 60 hours per week).

98.    From approximately 2013 until April 1st, 2017, Plaintiff Tina Pinheiro worked four (4) shifts or twelve (12) hours per day, five (4) days a week (typically 48 hours per week).

99.    From approximately 2011 until 2013, Plaintiff Tina Pinheiro was paid a flat rate of $40 per shift. In total, Ms. Pinheiro was paid $200 per week.

100.    From approximately 2013 until April 1st, 2017, Plaintiff Tina Pinheiro was paid a flat rate of 20 pero shift. Plaintiff Pinheiro typically worked two (2) double shifts and two (2) single shifts. In total, Ms. Pinheiro was paid $120 per week.

101.    Throughout her employment with Defendants, Plaintiff Tina Pinheiro was paid in cash.

102.    Plaintiff Tina Pinheiro's pay did not vary even when she was required to stay later or work a longer day than his usual schedule, which happened very frequently.

103.    Further, Defendants did not provide Tina Pinheiro with any document or other statement accounting for her actual hours worked, or setting forth the rate of pay for all of her hours worked.

104.    Plaintiff Tina Pinheiro was never notified by Defendants that her tips would be included as an offset for wages.

105.    Defendants did not account for these tips in any daily, weekly, or other accounting of Plaintiff Tina Pinheiro's wages.

106.    No notification, either in the form of posted notices or other means, was given to Plaintiff Tina Pinheiro regarding overtime and wages under the FLSA and NYLL.

107.    Defendants never provided Plaintiff Tina Pinheiro with each payment of wages a statement of wages, as required by NYLL 195(3).

108.    Defendants never provided Plaintiff Tina Pinheiro, any notice in Portuguese (Tina Pinheiro's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Mario Lima*

109.    Plaintiff Mario Lima was employed by Defendants from November, 2004, until April 1st, 2017.

110.    During this time, Plaintiff Mario Lima ostensibly was employed by Defendants as a bartender and waiter at "Shangri La", the Asian restaurant owned by Defendants.

111.    Plaintiff Mario Lima regularly handled goods in interstate commerce, such as alcohol and other supplies produced outside the state of New York.

112.    Plaintiff Mario Lima's work duties required neither discretion nor independent judgment.

113.    Plaintiff Mario Lima regularly worked more than 40 hours per week.

114.    From approximately April, 2011, until April 1st, 2017, Plaintiff Mario Lima worked twelve (12) hours per day, five days a week (typically 60 hours per week).

115.    From approximately April, 2011, until April 1st, 2017, Plaintiff Mario Lima was paid a flat rate of $20 per shift. Plaintiff Lima typically worked five (5) double shifts. In total, Mr. Lima was paid $200 per week.

116. Throughout his employment with Defendants, Plaintiff Mario Lima was paid in cash.

117. Plaintiff Mario Lima pay did not vary even when he was required to stay later or work a longer day than his usual schedule, which happens very frequently.

118. Defendants did not provide Plaintiff Mario Lima with a meal break or rest period of any kind throughout the entire time he worked there.

119. Further, Defendants did not provide Mario Lima with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

120. Plaintiff Mario Lima was never notified by Defendants that his tips would be included as an offset for wages.

121. Defendants did not account for these tips in any daily, weekly, or other accounting of Plaintiff Mario Lima's wages.

122. No notification, either in the form of posted notices or other means, was given to Plaintiff Mario Lima regarding overtime and wages under the FLSA and NYLL.

123. Defendants never provided Plaintiff Mario Lima with each payment of wages a statement of wages, as required by NYLL 195(3).

124. Defendants never provided Plaintiff Mario Lima, any notice in Portuguese (Mario Lima's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Rubens Rodrigues DePaula*

125. Plaintiff Rubens Rodrigues DePaula was employed by Defendants from October, 2009, until April 1st, 2017.

16

126.     During this time, Plaintiff Rubens Rodrigues DePaula ostensibly was employed by Defendants as a waiter and bartender at "Salsa and Salsa", the Mexican restaurant owned by Defendants.

127.     Plaintiff Rubens Rodrigues DePaula regularly handled goods in interstate commerce, such as alcohol and other supplies produced outside the state of New York.

128.     Plaintiff Rubens Rodrigues DePaula's work duties required neither discretion nor independent judgment.

129.     Plaintiff Rubens Rodrigues DePaula regularly worked more than 40 hours per week.

130.     From approximately January, 2011, until or about February, 2012, Plaintiff Rubens Rodrigues DePaula worked four (4) shifts per week, eleven (11) hours per day (typically 44 hours per week).

131.     From approximately January, 2011, until on or about February, 2012, Plaintiff Rubens Rodrigues DePaula was paid a flat rate of $40 per shift, working as a bartender two (2) days a week, and $10 per shift, working as a waiter two days a week. In total, Mr. Rodrigues DePaula was paid $100 per week.

132.     From approximately March, 2012, until or about March, 2014, Plaintiff Rubens Rodrigues DePaula worked three (3) shifts per week, eleven (11) hours per day (typically 33 hours per week).

133.      From approximately March, 2012, until on or about March, 2014, Plaintiff Rubens Rodrigues DePaula was paid a flat rate of $40 per shift, working as a bartender two (2) days a week, and $10 per shift, working as a waiter one (1) day a week. In total, Mr. Rodrigues DePaula was paid $90 per week.

134.    From approximately April, 2015, until or about March, 2017, Plaintiff Rubens Rodrigues DePaula worked two (2) shifts per week, eleven (11) hours per day (typically 22 hours per week).

135.    From approximately April, 2015, until on or about March, 2017, Plaintiff Rubens Rodrigues DePaula was paid a flat rate of $40 per shift, working as a bartender two (2) days a week. In total, Mr. Rodrigues DePaula was paid $80 per week.

136.    Throughout his employment with Defendants, Plaintiff Rubens Rodrigues DePaula was paid in cash.

137.    Plaintiff Rubens Rodrigues DePaula pay did not vary even when he was required to stay later or work a longer day than his usual schedule, which happens very frequently.

138.    Defendants did not provide Plaintiff Rubens Rodrigues DePaula with a meal break or rest period of any kind throughout the entire time he worked there.

139.    Further, Defendants did not provide Rubens Rodrigues DePaula with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

140.    Plaintiff Rubens Rodrigues DePaula was never notified by Defendants that his tips would be included as an offset for wages.

141.    Defendants did not account for these tips in any daily, weekly, or other accounting of Plaintiff Rubens Rodrigues DePaula's wages.

142.    No notification, either in the form of posted notices or other means, was given to Plaintiff Rubens Rodrigues DePaula regarding overtime and wages under the FLSA and NYLL.

143.    Defendants never provided Plaintiff Rubens Rodrigues DePaula with each payment of wages a statement of wages, as required by NYLL 195(3).

144.    Defendants never provided Plaintiff Rubens Rodrigues DePaula, any notice in Portuguese (Rubens Rodrigues DePaula primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Veronica Montiel*

145.    Plaintiff Veronica Montiel was employed by Defendants from June 2016 until March 30th, 2017.

146.    During this time, Plaintiff Veronica Montiel ostensibly was employed by Defendants as a waitress at "Salsa and Salsa", the Mexican restaurant, and at "Shangri La", the Asian restaurant owned by Defendants.

147.    Plaintiff Veronica Montiel regularly handled goods in interstate commerce, such as alcohol and other supplies produced outside the state of New York.

148.    Plaintiff Veronica Montiel's work duties required neither discretion nor independent judgment.

149.    Plaintiff Veronica Montiel regularly worked more than 40 hours per week.

150.    From approximately June, 2016, until September, 2016, Plaintiff Veronica Montiel worked two (2) days a week, one double shift and one single shift (typically 20 hours per week).

151.    From approximately June, 2016, until on or about September, 2016, Plaintiff Veronica Montiel was paid a flat rate of $10 per shift, working as a waitress at "Shangri-La", two days a week. In total, Ms. Montiel was paid $30 per week.

152.    From approximately October, 2016, until December, 2016, Plaintiff Veronica Montiel worked four (4) days a week, three double shifts and one single shift (typically 44 hours per week).

153.    From approximately October, 2016, until on or about December, 2016, Plaintiff Veronica Montiel was paid a flat rate of $10 per shift, working as a waitress at "Shangri-La" and "Salsa and Salsa", two days a week in each restaurant. In total, Ms. Montiel was paid $70 per week.

154.    From January, 2017, until April, 2017, Plaintiff Veronica Montiel worked five (5) days a week, four double shifts and one single shift (typically 56 hours per week).

155.    From approximately January, 2017, until on or about April, 2017, Plaintiff Veronica Montiel was paid a flat rate of $10 per shift, working as a waitress at "Shangri-La" and "Salsa and Salsa", three and two days a week in each restaurant respectively. In total, Ms. Montiel weekly salary was $90 per week.

156.    Throughout her employment with Defendants, Plaintiff Veronica Montiel was paid in cash.

157.    Plaintiff Veronica Montiel pay did not vary even when she was required to stay later or work a longer day than her usual schedule, which happens very frequently.

158.    Further, Defendants did not provide Veronica Montiel with any document or other statement accounting for her actual hours worked, or setting forth the rate of pay for all of his hours worked.

159.    Plaintiff Veronica Montiel was never notified by Defendants that her tips would be included as an offset for wages.

160.    Defendants did not account for these tips in any daily, weekly, or other accounting of Plaintiff Veronica Montiel wages.

161.    No notification, either in the form of posted notices or other means, was given to Plaintiff Veronica Montiel regarding overtime and wages under the FLSA and NYLL.

162.    Defendants never provided Plaintiff Veronica Montiel with each payment of wages a statement of wages, as required by NYLL 195(3).

163.    Defendants never provided Plaintiff Veronica Montiel any notice in Spanish (Veronica Montiel's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Zeferino Ramirez*

164.    Plaintiff Zeferino Ramirez was employed by Defendants from March, 2000, until April 1st, 2017.

165.    During this time, Plaintiff Zeferino Ramirez ostensibly was employed by Defendants as a cook at "Salsa and Salsa", the Mexican restaurant owned by Defendants.

166.    Plaintiff Zeferino Ramirez regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

167.    Plaintiff Zeferino Ramirez work duties required neither discretion nor independent judgment.

168.    Plaintiff Zeferino Ramirez regularly worked more than 40 hours per week.

169.    From approximately April, 2011, until April 1st, 2017, Plaintiff Zeferino Ramirez worked nine (9) hours per day, six (6) days a week (typically 54 hours per week). Mr. Ramirez worked from Tuesday to Sunday from 2:00 pm until 11:00 pm.

170.    From approximately April, 2011, until on or about April 1st, 2017, Plaintiff Zeferino Ramirez was paid a flat rate of $525 per week.

171.    Throughout his employment with Defendants, Plaintiff Zeferino Ramirez was paid in cash.

172.    Plaintiff Zeferino Ramirez pay did not vary even when he was required to stay later or work a longer day than his usual schedule, which happened very frequently.

173.    Further, Defendants did not provide Zeferino Ramirez with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

174.    Defendants did not account for these tips in any daily, weekly, or other accounting of Plaintiff Zeferino Ramirez wages.

175.    No notification, either in the form of posted notices or other means, was given to Plaintiff Zeferino Ramirez regarding overtime and wages under the FLSA and NYLL.

176.    Defendants never provided Plaintiff Zeferino Ramirez with each payment of wages a statement of wages, as required by NYLL 195(3).

177.    Defendants never provided Plaintiff Zeferino Ramirez any notice in Spanish (Zeferino Ramirez' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Alexandre M. Macedo*

178.    Plaintiff Alexandre Macedo was employed by Defendants from March 2000 until March 30th 2017.

179.    During this time, Plaintiff Alexandre Macedo ostensibly was employed by Defendants as a waiter, server and bartender at "Salsa and Salsa", the Mexican restaurant owned by Defendants.

180.    Plaintiff Alexandre Macedo regularly handled goods in interstate commerce, such as food, alcohol and other supplies produced outside the state of New York.

181.    Plaintiff Alexandre Macedo work duties required neither discretion nor independent judgment.

182.    Plaintiff Alexandre Macedo regularly worked more than 40 hours per week.

183.    From approximately April, 2011, until approximately December, 2016, Plaintiff Alexandre Macedo worked from Wednesday through Sunday, twelve (12) hours per day, five (5) days a week (typically 60 hours per week).

184.    From approximately April, 2011, until approximately December, 2016, Plaintiff Alexandre Macedo was paid a flat rate of $20 per shift, or $40 per double shift. Typically, Mr. Macedo was paid $200 per week flat.

185.    From approximately January, 2017, until April, 2017, Alexandre Macedo worked four (4) shifts per week, (typically 48 hours per week).

186.    From approximately January, 2017, until April, 2017, Plaintiff Alexandre Macedo was paid a flat rate of $20 per shift, or $40 per double shift. Typically, Mr. Macedo was paid $160 per week flat.

187.    Throughout his employment with Defendants, Plaintiff Alexandre Macedo was paid in cash.

188.    Plaintiff Alexandre Macedo pay did not vary even when he was required to stay later or work a longer day than his usual schedule, which happened very frequently.

189.    Defendants did not provide Plaintiff Alexandre Macedo with a meal break or rest period of any kind throughout the entire time he worked there.

190.    Further, Defendants did not provide Alexandre Macedo with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

191.     Plaintiff Alexandre Macedo was never notified by Defendants that his tips would be included as an offset for wages.

192.     Defendants did not account for these tips in any daily, weekly, or other accounting of Plaintiff Alexandre Macedo wages.

193.     No notification, either in the form of posted notices or other means, was given to Plaintiff Alexandre Macedo regarding overtime and wages under the FLSA and NYLL.

194.     Defendants never provided Plaintiff Alexandre Macedo with each payment of wages a statement of wages, as required by NYLL 195(3).

195.     Defendants never provided Plaintiff Alexandre Macedo any notice in Portuguese (Alexandre Macedo's sprimary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Defendants' General Employment Practices*

196.     At all times, relevant to this complaint, Defendants maintained a policy and practice of requiring Plaintiffs and all similarly situated employees to work in excess of 40 hours per week without paying them appropriate minimum wage, overtime, and spread of hours' compensation, as required by federal and state laws.

197.     Defendants' pay practices resulted in Plaintiffs not receiving payments for all their hours worked, resulting in Plaintiffs' effective rate of pay falling below the required minimum and overtime wage rate.

198.     Plaintiffs have been victim of Defendants' common policy and practices violating their rights under the FLSA and New York Labor Law by not paying them the wages they were owed for the hours they had worked.

199.    As part of their regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL.

200.    Defendants unlawfully misappropriated charges purported to be gratuity, received by Plaintiffs and other delivery workers in violation of New York Labor Law § 196-d (2007).

201.    Under the FLSA and the NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

202.    Defendants failed to provide Plaintiffs with statutorily required wage and hour records or statements of her pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of Plaintiffs' relative lack of sophistication in wage and hour laws.

203.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

204.    Upon information and belief, this was done to disguise the actual number of hours Plaintiffs worked, and to avoid paying Plaintiffs properly for (i) her full hours worked, (ii) for overtime due, and (iii) for spread of hours pay.

205.    Defendants did not provide Plaintiffs with any document or other statement accurately accounting for their actual hours worked, and setting forth rate of minimum wage and overtime wage.

206.    Plaintiffs were paid their wages entirely in cash.

207.    Defendants employed Plaintiffs as delivery workers and required them to provide their own locks, chains and helmets, and refused to compensate them or reimburse them for these expenses.

208.    Defendants did not provide Plaintiff with any break periods.

## FLSA COLLECTIVE ACTION CLAIMS

209.    Plaintiffs bring their FLSA minimum wage, overtime, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA").

210.    At all relevant times, Plaintiffs, and other members of the FLSA were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime, and spread of hours pay, and willfully failing to keep records required by the FLSA.

211.    The claims of Plaintiffs stated herein are similar to those of the other similarly situated employees.

## FIRST CAUSE OF ACTION
### (Violation of the Minimum Wage Provisions of the FLSA)

212.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

213.    At all times relevant to this action, Defendants were Plaintiffs employers (and employers of the putative FLSA) within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).

214.   Defendants had the power to hire and fire Plaintiff's (and the FLSA class members), control their terms and conditions of employment, and determine the rate and method of any compensation.

215.   At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

216.   Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

217.   Defendants failed to pay Plaintiffs (and the FLSA class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

218.   Defendants' failure to pay Plaintiffs (and the FLSA class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

219.   Plaintiffs (and the FLSA class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Violation of the Overtime Provisions of the FLSA)

220.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

221.   Defendants, in violation of the FLSA, failed to pay Plaintiffs (and the FLSA class members) overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C. § 207 (a)(1).

222.   Defendants' failure to pay Plaintiffs (and the FLSA class members) overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

223.   Plaintiffs (and the FLSA class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

**(Violation of the New York Minimum Wage Act)**

224.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

225.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

226.    Defendants had the power to hire and fire Plaintiffs (and the FLSA class members), control their terms and conditions of employment, and determine the rates and methods of any compensation in exchange for their employment.

227.    Defendants, in violation of the NYLL, paid Plaintiffs (and the FLSA class members) less than the minimum wage in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor.

228.    Defendants' failure to pay Plaintiffs (and the FLSA class members) minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

229.    Plaintiffs (and the FLSA class members) were damaged in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**(Violation of the Overtime Provisions of the New York Labor Law)**

230.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

231.    Defendants, in violation of the NYLL § 190 *et seq*. and associated rules and regulations, failed to pay Plaintiffs (and the FLSA class members) overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

232.    Defendants failed to pay Plaintiffs (and the FLSA class members) in a timely fashion, as required by Article 6 of the New York Labor Law.

28

233.    Defendants' failure to pay Plaintiffs (and the FLSA class members) overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

234.    Plaintiffs (and the FLSA class members) have been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
**(Violation of the Spread of Hours Wage Order of the New York Commissioner of Labor)**

235.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

236.    Defendants failed to pay Plaintiffs (and the FLSA class members) one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of New York Lab. Law §§ 190 *et seq*. and 650 *et seq*. and the wage order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 137-1.7 and 137-3.11.

237.    Defendants' failure to pay Plaintiffs (and the FLSA class members) an additional hour's pay for each day Plaintiffs' (and the FLSA class members) spread of hours exceeded ten hours was willful within the meaning of New York Lab. Law § 663.

238.    Plaintiffs (and the FLSA class members) were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
**(Violation Of The Notice And Recordkeeping**
**Requirements Of The New York Labor Law)**

239.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

240.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), of their rate of pay, regular pay day, and such other information as required by NYLL §195(1).

241.    Defendants are liable to each Plaintiff in the amount of $2,500, together with

costs and attorney's fees.

## SEVENTH  CAUSE OF ACTION
### (Violation Of The Wage Statement Provisions
### Of The New York Labor Law)

242.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

243.    Defendants did not provide Plaintiffs with wage statements upon each payment of wages, as required by NYLL 195(3).

244.    Defendants are liable to each Plaintiff in the amount of $2,500, together with costs and attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be Plaintiff in the FLSA claims in this action;

(b)    Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA class members;

(c)    Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA class members;

(d)    Declaring that Defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violation of the provisions of the FLSA was willful as to Plaintiffs and the FLSA class members;

(f)      Awarding Plaintiffs and the FLSA class members damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)      Awarding Plaintiff and the FLSA class members liquidated damages in an amount equal to 100% of her damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)      Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs and the members of the FLSA Class;

(i)      Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs and the members of the FLSA Class;

(j)      Declaring that Defendants have violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiffs and the members of the FLSA Class;

(k)      Declaring that Defendants have violated the recordkeeping requirements of the NYLL with respect to Plaintiff' and the FLSA class members' compensation, hours, wages; and any deductions or credits taken against wages;

(l)      Declaring that Defendants' violations of the New York Labor Law and Spread of Hours Wage Order were willful as to Plaintiffs and the FLSA class members;

(m)      Awarding Plaintiff and the FLSA class members damages for the amount of unpaid minimum and overtime wages, damages for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable;

(n)     Awarding Plaintiffs and the FLSA class members liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, spread of hours pay, and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable;

(o)     Awarding Plaintiffs and the FLSA and class members pre-judgment and post-judgment interest as applicable;

(p)     Awarding Plaintiffs and the FLSA class members the expenses incurred in this action, including costs and attorney's fees; and

(q)     All such other and further relief as the Court deems just and proper.


Dated:  New York, New York
April 10, 2017

                                    LINA FRANCO LAW, P.C.


                            By:     /s/Lina M. Franco

                                    Lina M. Franco, Esq.
                                    Wilhelm J. Ceron, Esq.
                                    42 Broadway, 12th Floor
                                    New York, New York 10004
                                    Telephone: 1800-933-5620
                                    www.LinaFrancoLawPC.com
                                    *Attorneys for Plaintiffs*